IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MITCHELL SIEMENS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 22-cv-179-DES |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mitchell Siemens ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court REVERSES and REMANDS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

In May 2017, Claimant applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Act. (R. 15, 219-24). Claimant alleges he has been unable to work since September 1, 2015, due to lumbago, sciatica, a bulging disc, stenosis, degenerative disc disease, anxiety, depression, and multiple personalities. (R. 15, 219, 239). Claimant was 40 years old on the date of the ALJ's decision. (R. 27, 219). He has at least a ninth-grade education[1] and past work as a forklift operator, carpenter's helper, and barbwire machine operator. (R. 25, 56-57).

Claimant's claims for benefits were denied initially and on reconsideration, and he requested a hearing. (R. 68-130, 159). ALJ Clifford Shilling conducted an administrative hearing (R. 32-64), and ALJ Timothy Suing issued a decision on April 29, 2020, finding Claimant not disabled. (R. 15-27, 32-64). The Appeals Council denied review on May 25, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Claimant filed this appeal on June 14, 2022. (Docket No. 2).

## III.    The ALJ's Decision

In his decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 1, 2015. (R. 17). At step two, the ALJ found Claimant had severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, depression, and anxiety. (R. 18). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 18-20).

---

[1] Claimant indicated on his disability report that he finished eleventh grade (R. 240), but reported to Dr. Efrid that he completed ninth grade (R. 404), and reported to Dr. Spray that he dropped out of school in tenth grade (R. 483).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following non-exertional limitations:

> [H]e was limited to occasional climbing of ramps and stairs. He can never climb ropes or scaffolds. He is limited to occasional balancing, stooping, with frequent reaching overhead on the right. In addition, the individual was able to perform work where interpersonal contact was incidental and the complexity of tasks was learned and performed by rote. The supervision required would be simple, direct, and concrete.

(R. 20).

At step four, the ALJ concluded Claimant could not return to his past relevant work. (R. 25). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including power screwdriver operator, filling and closing machine tender, and collator operator. (R. 26). Accordingly, the ALJ concluded Claimant was not disabled. (R. 27).

**IV.   Issues Presented**

Claimant contends that the ALJ erred by: (1) failing to properly evaluate the medical source opinion of Dr. Robert Spray (Docket No. 12 at 8-10; (2) failing to account for Claimant's hand impairment in the RFC (*id.* at 10); (3) failing to properly evaluate Claimant's subjective symptoms (*id*. at 11); and (4) adopting VE testimony in response to a hypothetical question that did not include all his limitations (*id*. at 11-12). The Court agrees the ALJ erred in evaluating Dr. Spray's medical source opinion.

**V.   Analysis**

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [his] impairment(s) and whether [he has] one or more

impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). These abilities include the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." 20 C.F.R. §§ 404.1513(a)(2)(i), 416.913(a)(2)(i). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. §§ 404.1520c(a), (c) & 416.920c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[2] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2), (3) & 416.920c(b)(2), (3).

---

[2] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

At the request of Claimant's attorney, Dr. Spray conducted a consultative mental status examination of Claimant on February 1, 2019. (R. 483-86). Claimant reported having problems with anxiety "all his life, but these symptoms have become more prominent." (R. 483). Claimant also described his mood as lethargic, readily admitted to unprovoked anger, and indicated he experiences "tingling on the ends of his fingers and difficulty breathing . . . . occasionally in stressful situations, for example when he is around strangers but also occur randomly." (R. 486). Dr. Spray observed Claimant had an appropriate and variable affect, was "somewhat shaky and perhaps a little timid," and maintained poor eye contact. (R. 484-85). Dr. Spray diagnosed Claimant with other specified anxiety disorder with elements of generalized anxiety, panic attacks, agoraphobia, and trauma; cannabis use disorder, in sustained remission although still has occasional use; and unspecified depressive disorder/rule out unspecified bipolar disorder and other related disorder. (*Id*.)

On February 27, 2019, Dr. Spray completed a medical source statement regarding Claimant's ability to do work activities. (R. 487-90). The form he completed asked for an opinion on the degree of Claimant's limitations in various functional areas – either none, mild, moderate, marked, severe, or extreme – resulting from Claimant's mental impairments.[3]  Dr. Spray checked boxes indicating Claimant was severely limited in ten of the thirty-five functional abilities he

---

[3] The form defined "none" as "[n]o limitations. If present, they are transient and/or expected reactions to psychological stresses and cause no diminution in performance." (R. 487). Mild limitation was defined as "[f]rom zero to nine percent (0-9%) of work time, there is a slight limitation, but the individual can generally adequately function." Moderate limitation was defined as "[f]rom ten to twenty percent (10-20%) of work time, there is a noticeable diminution in performance, which would intermittently impair performance to less than the industry norm." (*Id*.) Marked limitation was defined as "[f]rom twenty-one to thirty-five percent (21-35%) of work time, the individual cannot usefully perform or sustain the activity." (*Id*.) Severe limitation was defined as "[f]rom thirty-six to fifty percent (36-50%) of work time, very seriously impairs the ability to perform work activities by interfering with either social relations or occupational functioning, or some in both." (*Id*.) Finally, extreme limitations was defined as "[t]here is a major limitation in performance with no useful or sustained ability to function from fifty-one to one hundred percent (51-100%) of the time." (*Id*.)

assessed, including his ability to: (1) relate to coworkers; (2) interact with supervisors; (3) adjust to the introduction of new and unfamiliar personnel, either among co-workers or supervisors; (4) interact with the general public; and (5) accept instructions and appropriately respond to criticism from supervisors. (R. 487-89). Dr. Spray indicated Claimant was markedly limited in nine of the functional abilities he assessed, including his ability to: (1) deal with work stresses; (2) perform at a consistent pace without an unreasonable number or length of rest periods; and (3) respond appropriately to changes in work setting and work procedures. (*Id.*) Dr. Spray indicated Claimant had moderate limitations in nine functional abilities, including his ability to: (1) understand, remember, and carry out detailed or complex instructions; and (2) make simple work-related decisions. (R. 487-88). Dr. Spray found Claimant was mildly limited in the remaining seven functional abilities he assessed, including his ability to understand remember, and carry out very short and simple instructions. (*Id.*)

In his written opinion, the ALJ found Dr. Spray's "severe" limitations were unsupported by his own examination and were inconsistent with unspecified treatment notes of record showing no abnormalities in social functioning. (R. 25). The ALJ thus concluded Dr. Spray's "severe" limitations were not persuasive. (*Id.*) As to Dr. Spray's remaining limitations (i.e., those he identified as marked, moderate, and mild), however, the ALJ provided no analysis of their persuasiveness, much less explain how the RFC accounted for the limitations set forth by Dr. Spray. This analysis was particularly important here because the ALJ purported to wholly reject Dr. Spray's opinion regarding social limitations, but nonetheless adopted some of his social limitations in the RFC assessment without explanation. *See Chapo v. Astrue,* 682 F.3d 1285, 1291-92 (10th Cir. 2012) (finding error where the ALJ "fully discounted the bulk of" a medical source's opinion but accepted a restriction in dealing with the public "with no explanation at all as to why

7

one part of his opinion was creditable and the rest was not."); *see also Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted). It is the lack of adequate explanation, in addition to the failure to account for all the limitations set forth by Dr. Spray that requires remand.

## VI.  Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is REVERSED and REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED this  16th  day of August, 2023.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE